2013 VT 68

### Rachel Smith v. Jasper Wright

[79 A.3d 876]

No. 12-431

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 9, 2013

*Maryellen Griffin*, Vermont Legal Aid, St. Johnsbury, for Plaintiff-Appellee.

*Charles S. Martin* of *Martin & Associates, P.C.*, Barre, for Defendant-Appellant.

¶ 1. **Dooley, J.** Defendant appeals from a final relief-from-abuse order in which the family division of the superior court concluded that plaintiff was a vulnerable adult and that defendant abused and exploited her. We affirm.

¶ 2. Plaintiff was born in November 1992. She was deaf for the first several years of her life, resulting in developmental delays that caused her to be held back in school. She met defendant, who was born in March 1972, while he was doing some carpentry work for her stepfather sometime between 2007 and 2009. Beginning in the summer of 2009, plaintiff accepted defendant's invitation to ride horses with his daughter on his property. As a result, plaintiff and defendant's daughter became best friends, and she frequented defendant's home.

¶ 3. During the summer of 2011, defendant ran over and severely injured plaintiff's foot while engaged in a "stupid game" in which he would drive his truck forward each time she tried to get into it. Soon after plaintiff returned from the hospital, defendant came to plaintiff's home and confronted plaintiff's

stepfather and mother (hereinafter parents) about his desire to take plaintiff to live with him and his family. Shortly thereafter, plaintiff's parents obtained a no-trespass notice against defendant and advised him to stay away from plaintiff. In the fall of 2011, plaintiff's parents petitioned for a voluntary guardianship to deal with medical and legal issues surrounding plaintiff's injury. The probate court granted their petition in October 2011, making them plaintiff's co-guardians with the power, among others, to control her place of residence and her financial affairs.

¶ 4. On July 4, 2012, plaintiff was with her family at a fair when she saw defendant but ignored him. In the next few days, she discussed defendant and his daughter with mutual acquaintances through Facebook. She asked if defendant and his daughter missed her and wondered if defendant was mad at her. She expressed her love for defendant and his daughter and stated that she missed them. She wanted her friend to tell defendant that she was sorry for the way she acted towards him at the fair. She expressed regret with the situation that had arisen between her parents and defendant, and she indicated a desire to see defendant though she was fearful of getting into trouble again with her parents. She indicated, however, that she would be "walking up the hill" soon to see defendant.

¶ 5. On July 8, 2012, plaintiff met defendant and went to his home with him. Upon learning of his stepdaughter's whereabouts, plaintiff's stepfather went to defendant's residence and insisted that plaintiff return home with him. The state police were called, and eventually a compromise was reached whereby plaintiff would stay that night at the home of a third party. The next morning, plaintiff's stepfather went to the third party's residence and took plaintiff home. Defendant also went to the third party's residence later that same morning and became angry upon learning that plaintiff had been taken to her home, claiming that plaintiff was not supposed to have any contact with her parents or him until she had spoken to a neutral mental health worker. Shortly after plaintiff returned home, she revealed to her mother incidents of past sexual encounters between defendant and her.

¶ 6. On July 11, 2012, plaintiff and her mother filed a complaint for relief from abuse (RFA) pursuant to chapter 69 of Title 33 concerning abuse prevention for vulnerable adults. In support of her claim that defendant has abused and exploited her, plaintiff stated as follows: "Two summers ago I was in the car alone with

[defendant] and he putted out his penis . . . and he took my hand he had me rub it and I was scared and pulled it away and he took my hand he my hand." The court issued a temporary ex parte RFA order, and held a full-day hearing on August 29, 2012. Plaintiff, defendant, and several other witnesses testified. Plaintiff testified that defendant had initiated unwanted sexual contact with her on more than five occasions starting when she was seventeen years old, including incidents where defendant had her touch and lick his penis. She further testified that this conduct "scared" her and that defendant told her not to tell anyone. Defendant denied any inappropriate sexual contact.

¶ 7. Following the hearing, the court issued a final RFA order, concluding that plaintiff was a vulnerable adult and that defendant had abused and exploited her. The order prohibited defendant from contacting plaintiff in any manner directly or indirectly for a period of two years. Defendant filed a motion to alter or amend the judgment, arguing that the trial court failed to make sufficient findings to support its conclusion that plaintiff was a credible witness. The trial court denied the motion, and defendant appealed. On appeal, he argues that: (1) the trial court failed to make sufficient findings to support its conclusions that plaintiff was a vulnerable adult and a credible witness; and (2) plaintiff failed to meet her burden of proving by a preponderance of the evidence that defendant sexually exploited her.

¶ 8. Before examining these issues, we review the applicable law and the trial court's findings and conclusions. A "vulnerable adult" or an "interested person on behalf of a vulnerable adult" may seek an RFA order based on the alleged abuse, neglect, or exploitation of the vulnerable adult. 33 V.S.A. § 6933(a). A "vulnerable adult" includes any person over eighteen years of age who, among other things, has "a physical, mental, or developmental disability" that impairs that individual's ability "to provide for his or her own care without assistance" or "to protect himself or herself from abuse, neglect, or exploitation." *Id.* § 6902(14)(D).

¶ 9. "Abuse" is defined, among other things, as (1) behaving toward a vulnerable adult in a manner that "places life, health, or welfare in jeopardy or which is likely to result in impairment of health," *id.* § 6902(1)(A), or (2) "[i]ntentionally subjecting a vulnerable adult to behavior which should reasonably be expected to result in intimidation, fear, humiliation, degradation, agitation, disorientation, or other forms of serious emotional distress." *Id.*

§ 6902(1)(E). "Exploitation" includes "[a]ny sexual activity" to which the vulnerable adult does not consent "or when the actor knows or should know that the vulnerable adult is incapable of resisting or declining consent to the sexual activity due to age or disability or due to fear of retribution or hardship, whether or not the actor has actual knowledge of vulnerable status." *Id.* § 6902(6)(D).

¶ 10. The plaintiff has "the burden of proving abuse, neglect, or exploitation by a preponderance of the evidence." *Id.* § 6935(a). "If the court finds that the defendant has abused, neglected, or exploited the vulnerable adult, the court shall make such order as it deems necessary to protect the vulnerable adult." *Id.*

¶ 11. Here, the trial court made oral findings and conclusions on the record. The court first concluded that plaintiff was a vulnerable adult in that she suffered from a developmental disability that continued to affect her, particularly her language and communication skills. The court noted that she was nineteen years old and yet still in high school. The court also noted its observations of plaintiff's "difficult" testimony, which further indicated that her developmental disability impaired her understanding of questions posed to her during her examination. The court then concluded that plaintiff's disability impaired her ability to protect herself from abuse and exploitation, noting that plaintiff was the subject of a voluntary guardianship that gave her parents broad powers over her affairs.

¶ 12. Finally, the court concluded that defendant had both abused and exploited plaintiff. With regard to abuse, the court concluded that by driving over plaintiff's foot while engaged in horseplay, defendant had placed the health and welfare of a vulnerable adult in jeopardy. The court also found that by placing plaintiff's hands on his sexual organs, defendant knew or should have known that his behavior would result in intimidation and serious emotional distress to a vulnerable adult. With regard to exploitation, the court concluded that defendant's sexual conduct towards plaintiff was unwanted and thus fit within the meaning of the definition of § 6902(6)(D), as set forth above.

¶ 13. The court stated that defendant's conduct was the "essence of exploitation" in that defendant "was dealing with a young woman, far younger than he, who he knew to have some limitations of an intellectual capacity perhaps or a developmental capacity and [he] took advantage . . . of those infirmities."

According to the court, defendant took plaintiff "into his confidence and asserted himself into the relationship between the Plaintiff and her family in a way that exploited the weakness of the Plaintiff for his own sexual gratification."

¶ 14. We now return to defendant's claims of error. Defendant first argues that neither the evidence nor the court's findings support its conclusion that plaintiff was a vulnerable adult. He complains that the trial court's findings contain no linkage between plaintiff's hearing impairment and her ability to protect herself. According to defendant, plaintiff's testimony that she was scared and resisted his sexual advances demonstrated her ability to protect herself. He also contends that the testimony of other witnesses regarding her desire to leave her parents' home and resist their attempts to bring her back to that home demonstrated her ability to think for herself and act on her own.

¶ 15. We first note that defendant never asserted at the RFA hearing that plaintiff was not a vulnerable adult. His defense was that he did not engage in the alleged abusive and exploitive conduct and that plaintiff's claims to the contrary were not credible. At the conclusion of plaintiff's case in chief, defendant moved for a directed verdict based on: (1) the acknowledgment of plaintiff's mother that his running over plaintiff's foot was an accident; and (2) plaintiff's lack of credibility as evidenced by inconsistencies in her testimony. In his motion to alter or amend the judgment, defendant argued that the court failed to make findings on plaintiff's suspect credibility. At no point during the proceedings did defendant suggest that plaintiff was not a vulnerable adult. Thus, defendant failed to preserve this argument for appeal. See *Bull v. Pinkham Eng'g Assocs.*, 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal."); cf. *Lay v. Pettengill*, 2011 VT 127, ¶ 32 n.10, 191 Vt. 141, 38 A.3d 1139 (concluding that appellant failed to preserve at trial his challenge to "favorable termination" element with regard to his claim of malicious prosecution).

¶ 16. In any event, the record supports the court's conclusion that plaintiff was a vulnerable adult. Extensive findings are not generally required in civil abuse proceedings, which are aimed at providing relief to the putative victim rather than punishing the alleged perpetrator. See *Farr v. Searles*, 2006 VT 110, ¶ 3, 180 Vt.

642, 910 A.2d 929 (mem.) (acknowledging that "extensive findings for relief from abuse proceedings" are not required, but finding error where trial court made "no factual findings" on "whether plaintiff was a vulnerable adult"); see also *Raynes v. Rogers*, 2008 VT 52, ¶ 8, 183 Vt. 513, 955 A.2d 1135 (noting that RFA orders are "unique in that they are intended to provide immediate relief from intrafamily violence as well as to protect victims from future abuse, rather than to hold perpetrators liable for past acts of violence"). Here, the fact that defendant never contested plaintiff's status as a vulnerable adult further explains the trial court's limited findings on this issue.

■ ■ ¶ 17. The record depicts a young woman who has significant impairments that have delayed her ability to understand, to express herself, and to handle her own affairs. She was under the age of majority when at least some of the alleged abusive and exploitative conduct took place,[*] and she was nineteen years old at the time of the RFA hearing. The court noted that plaintiff was the subject of a guardianship giving her parents broad powers over nearly all aspects of her life — including her care, residence, education, employment, financial affairs, and medical and legal decisions — and remaining in effect even after she reached the age of majority. We reject defendant's argument that guardianship is irrelevant as to whether plaintiff is a vulnerable adult because it is voluntary. Although the guardianship does not conclusively prove that plaintiff is a vulnerable adult, it indicates her functional limitations. Plainly, she is a vulnerable adult whose impairment affects her ability to provide for her own care without assistance, as set forth in § 6902(14)(D)(i).

¶ 18. Defendant argues, however, that the court's findings do not support a linkage between the nature of plaintiff's impairment and her ability to protect herself. Once again, this argument was not raised in the hearing below and thus not preserved for appeal. In any event, as with the defendant's prior argument, the record does not support it.

---

[*] Although plaintiff had not reached the age of majority when the alleged abuse began, she was a nineteen-year-old adult at the time she sought an RFA order from the court. The court is required to issue orders it deems necessary to protect vulnerable adults who have been abused. 33 V.S.A. § 6935(a). The statute does not require that the abuse of the vulnerable adult occurred after the adult reached the age of majority, although in this case the evidence suggested that at least some of the abuse did in fact occur after plaintiff reached the age of majority.

¶ 19. The relevant part of the definition of "vulnerable adult" states that a person over eighteen years of age is a vulnerable adult if they suffer from a physical, mental, or developmental disability that impairs their ability (1) to provide for their own care without assistance *or* (2) to protect themselves from the abuse, exploitation, or neglect. 33 V.S.A. § 6902(14)(D)(i)-(ii). On its face, the statutory definition of "vulnerable adult" appears to allow either alternative. Here, however, the court specifically concluded that plaintiff's disability impaired her ability to protect herself against defendant's sexual advances. We need not address whether the court's conclusion was necessary because the record supports that conclusion and it satisfies the statutory definition.

¶ 20. It is undisputed that plaintiff suffered from impairments as a child that led to significant developmental delays still affecting her. The testimony at the final RFA hearing indicated that plaintiff had trouble communicating and understanding. The alleged abusive and exploitive contact began when plaintiff was seventeen years old. Given her age, coupled with her significant developmental delays, the record supports the court's findings that defendant exploited plaintiff's limitations by making unwanted sexual advances. As the trial court concluded, defendant's conduct of gaining her confidence and asserting himself into her relationship with her parents in a manner that took advantage of her vulnerability so as to satisfy his own sexual gratification was "the essence of exploitation."

¶ 21. Next, defendant argues that the trial court erred in failing to make findings to support its conclusion that plaintiff was a credible witness. According to defendant, the case "cries out for findings" on credibility, given evidence at the RFA hearing concerning plaintiff's desire to reestablish a relationship with defendant against the wishes of her parents, her resistance to returning to her parents' care, and her sudden accusations of abuse against him after her return to her parents. Defendant points to plaintiff's Facebook exchanges, and most particularly to her denial that she made the statement that she felt bad because she "put [defendant] in the middle and his family." Defendant surmises that plaintiff's denial of having typed that one statement "gives a clear insight" that what was "really happening was Plaintiff having conflicts with her mother and stepfather and she was placing Defendant in the middle of that conflict." In defendant's view, "[h]er solution to that problem was simply eliminating

Defendant from the equation by agreeing to a court order keeping them separated." As further evidence of plaintiff's lack of credibility defendant points to inconsistencies in her trial testimony, particularly in identifying the time when the first incident of abuse took place and the specific number of such incidents.

■ ¶ 22. We find no merit to this argument. As a general matter, "[w]e will uphold factual findings on appeal if any credible evidence in the record supports them, leaving credibility determinations to the trier of fact." *Siegel v. Misch*, 2007 VT 116, ¶ 10, 182 Vt. 623, 939 A.2d 1023 (mem.) (citation omitted); see *Omega Optical, Inc. v. Chroma Tech. Corp.*, 174 Vt. 10, 20-21, 800 A.2d 1064, 1071-72 (2002) (noting that "[d]eterminations of credibility are solely the province of the factfinder" and thus rejecting plaintiff's "argument that the trial court failed to make adequate findings on the credibility of each of the [witnesses] and erred by failing to adopt instead [plaintiff's] proposed findings on the issue of their credibility"). Particularly, "[i]n matters of personal relations, such as abuse prevention, the family court is in a unique position to assess the credibility of witnesses and weigh the strength of evidence at hearing." *Raynes*, 2008 VT 52, ¶ 9.

■ ¶ 23. As noted, the testimony in this case portrayed a distraught young woman who struggled with communication difficulties and felt conflicted about her relationship with defendant and her parents. The court heard the testimony and was well aware of plaintiff's conflicted state of mind. Nothing in the record, including evidence indicating that plaintiff was having problems with her parents and was sorry for having put defendant in the middle of the situation, compelled the court to find that she was not credible. Having heard a full day of testimony from several witnesses, including plaintiff and defendant, the trial court found plaintiff to be credible. The court was not required to make further findings to explain the basis for its determination that plaintiff was credible.

¶ 24. Finally, defendant argues that plaintiff failed to meet her burden of showing by a preponderance of the evidence that he sexually exploited her. According to defendant, given that plaintiff obviously lied about not typing the one statement in her Facebook page and that her testimony at the final RFA hearing was inconsistent with the short statement she wrote in support of her petition for relief from abuse, the testimony is "tainted" and

therefore must be stricken, leaving her petition without any evidentiary support.

¶ 25. This argument is unavailing in that it relies upon our acceptance of the same credibility argument that we just rejected. Essentially, defendant's argument is that there was insufficient evidence to support the trial court's final RFA order. We disagree. The question of whether there was sexual contact between defendant and plaintiff was for the most part a credibility contest between plaintiff and defendant. Plaintiff testified that on more than five occasions defendant had sexual contact with her. Defendant denied the contact.

¶ 26. Other evidence supported plaintiff's testimony, however. Defendant acknowledged in his testimony that there were times when he was alone with plaintiff — times that coincided with plaintiff's recollection of the alleged sexual contact. Other testimony, including defendant's, revealed that defendant reacted very passionately in situations concerning plaintiff. For example, when plaintiff returned home from the hospital after he had injured her foot, he went to her home and insisted on taking her home with him. When he arrived at the home of the third party after plaintiff's parents had taken her back to their home, he was so angry and upset that he admitted threatening to shoot her parents. He explains this passionate behavior as stemming from his strong interest in plaintiff's welfare, but the trial court was not compelled to share that view. In short, there is ample evidence in the record for the trial court to have found that defendant engaged in inappropriate sexual contact with plaintiff, who was a vulnerable adult.

*Affirmed.*