NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 55

No. 23-AP-103

| | |
|---|---|
| Carissa Poss | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Family Division |
| | |
| Seth Alarie | September Term, 2023 |

Elizabeth Novotny, J.

Carissa Poss, Pro Se, Essex Junction, Plaintiff-Appellee.

Christopher A. Dall of Law Office of Jason Sawyer, P.L.C., Burlington, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.     **CARROLL, J.**    Defendant Seth Alarie appeals from a final relief-from-abuse (RFA) order requested by plaintiff Carissa Poss, his former girlfriend. We affirm.

¶ 2.     On February 6, 2023, plaintiff filed a form RFA complaint in the family division alleging that defendant physically abused and stalked her on two previous occasions. Plaintiff attached a form affidavit in support of the complaint detailing an incident at plaintiff's home in November 2022, and one at PetSmart in Williston in February 2023. She represented that in 2020 defendant threatened to kill himself following an earlier breakup, and that plaintiff considered those threats to be manipulative. Plaintiff also attached a handwritten sworn statement representing that the parties separated in June 2022. Following their separation, plaintiff did not

want defendant to know where she lived. She averred that defendant ultimately "pieced things together" and drove by her house on multiple occasions. Plaintiff recounted that defendant told her of and showed her pictures of cars outside her home as "proof and leverage" that she should not have custody of the couple's dog they had adopted before their breakup. Plaintiff also detailed the November incident, in which defendant and plaintiff had a physical altercation at her home, and the February incident at PetSmart, where plaintiff was forced to call her father to escort her from the parking lot following defendant's threatening statements.

¶ 3. The family division issued a temporary RFA order on February 6, 2023, and set a hearing for 8 a.m. on February 16. Defendant was served with the complaint, both affidavits, the temporary order, and the notice of hearing at 4 p.m. on February 15. Both parties appeared at the hearing pro se.[1]

¶ 4. At the outset, defendant told the court that he had been served the prior afternoon. He explained that he was not sure "what some of this means." The court described the hearing as "a summary proceeding; a very short proceeding." The court asked defendant whether he had contacted an attorney, and defendant said that he had called one but had not heard back. The court asked, "so what is your request to the court?" Defendant responded that even though he had only sixteen hours to prepare, he had "enough to prove" that he was not stalking plaintiff. The court then explained how the hearing would proceed and the standard for whether it would issue a final RFA order after the hearing. Defendant said that he understood and that he wanted to testify.

¶ 5. The court found the following based on the parties' testimony and admitted exhibits proffered by defendant. The couple broke up in the summer of 2022 following earlier separations. Plaintiff moved out into her own residence and did not want defendant to know where she lived. Defendant ultimately found out where plaintiff lived and went to the house several times knowing

---

[1] The transcript indicates that the hearing began at 11:13 a.m. and concluded at 1:54 p.m.

plaintiff did not want him there. Defendant showed plaintiff photographs of cars parked in her driveway and told her that if he found out that the person operating a specific car had been intimate with plaintiff, defendant would "fucking kill him." On another occasion, defendant went inside plaintiff's house, unplugged a camera, and did not leave over plaintiff's requests to do so. Defendant then took a dog they had adopted prior to their separation and put the dog in his truck, which was parked in the driveway. When plaintiff went to get the dog from defendant's truck, defendant grabbed plaintiff's clothes by her neck with both hands. Plaintiff punched defendant in an attempt to escape. Defendant threw plaintiff's phone across the lawn, and tackled plaintiff to the ground. Defendant got on top of her using his body weight to restrain her. Plaintiff was injured in the struggle, which ended only because a neighbor appeared. During a prior breakup defendant had traveled to Maine to confront the person with whom plaintiff was in a relationship. Defendant made threats that he would make plaintiff's life "a living hell" and would try to disrupt her housing situation. Plaintiff stopped going to a dog class that she had arranged and paid for because she was afraid of defendant.

¶ 6.     Based on these findings the court found by a preponderance of the evidence that defendant had abused and stalked plaintiff. The court issued its findings and conclusions orally from the bench and followed up with a written order prohibiting defendant from, among other things, contacting plaintiff or coming within 300 feet of plaintiff, her residence, place of employment, or car for one year. This appeal followed.

¶ 7.     Defendant, now represented by counsel, makes several arguments attacking the proceedings below.[2] He contends that the court's characterization of the hearing as "summary" was reversible error. He argues that due process rights apply to RFA proceedings and that the court violated those rights by holding the hearing after he received less than twenty-four hours'

_____

[2] Plaintiff did not participate in this appeal.

3

notice and not granting a continuance for defendant to retain counsel. He asserts that the court violated other due process rights when it did not permit him to cross-examine plaintiff and took testimony outside the scope of the facts alleged in the pleadings.

¶ 8. To obtain an RFA order, a plaintiff must prove by a preponderance of the evidence that a family or household member abused them and that there is a danger of further abuse. 15 V.S.A. §§ 1103(b), (c). Our review of the issuance of RFA orders is deferential. Moreau v. Sylvester, 2014 VT 31, ¶ 37, 196 Vt. 183, 95 A.3d 416. We will uphold the family division's "findings if supported by the evidence and its conclusions if supported by the findings." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513, 955 A.2d 1135.

¶ 9. Defendant first contends that defendants in RFA proceedings enjoy due process protections under the federal and state constitutions. We have intimated that proposition before without expressly holding it. See, e.g., Forrett v. Stone, 2021 VT 17, ¶ 21 n.2, 214 Vt. 283, 256 A.3d 585; State v. Waters, 2013 VT 109, ¶ 19, 195 Vt. 233, 87 A.3d 512. We now affirm that federal and state due process protections apply to RFA defendants in Vermont.

¶ 10. We turn next to defendant's contention that the court's characterization of the hearing as "summary" was error, and deprived him of fundamental rights under the federal and Vermont constitutions. Defendant did not object to the court's characterization of the hearing as "summary," and therefore did not preserve this issue for appellate review. Follo v. Florindo, 2009 VT 11, ¶ 16, 185 Vt. 390, 970 A.2d 1230. Accordingly, our review is only for plain error, which in civil cases occurs "only in limited circumstances, i.e., when an appellant raises a claim of deprivation of fundamental rights." Pcolar v. Casella Waste Sys., Inc., 2012 VT 58, ¶ 21, 192 Vt. 343, 59 A.3d 702 (quotation omitted); see Varnum v. Varnum, 155 Vt. 376, 383, 586 A.2d 1107, 1111 (1990) (holding that in child-custody context, mother's unpreserved issue only reviewed for "fundamental miscarriage of justice" because of children's "weighty interests" in stability and permanency).

¶ 11.  To the extent that "summary" proceedings dispense with procedures governing evidentiary hearings as defendant contends, the trial court erred when it mischaracterized the hearing as "summary."  In addition to due process protections afforded by the federal and Vermont constitutions, RFA hearings are governed by the Vermont Rules for Family Proceedings, 15 V.S.A. § 1106(a), the Vermont Rules of Evidence, V.R.E. 1101(a), and, with two exceptions not applicable here, the Vermont Rules of Civil Procedure, V.R.F.P. 9(a).  However, even if the court erred in referring to the hearing as "summary," the record shows that the court followed the proper procedure here.  The court swore in both parties before they gave testimony, accepted five documents proffered by defendant into evidence, granted defendant additional time to present his argument, entertained one objection by defendant, and issued detailed oral findings and conclusions from the bench that defendant does not contest.  See 15 V.S.A. § 1103; see also V.R.F.P. 9.  Defendant does not identify any way in which the court's use of the description "summary" affected the procedural aspects of the hearing.  Accordingly, the court's mere characterization of the hearings as "summary" is not reversible error.

¶ 12.  Defendant next contends that he received insufficient notice to prepare an effective defense.  However, defendant failed to object on this ground below.  Defendant's statements to the court that he was served sixteen hours prior to the hearing, without more, fall short of our standard for preserving an issue.  "The mere mention" of service the day before "lacks the specificity and clarity necessary to preserve the claim now being made."  State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994); see Rollo v. Cameron, 2013 VT 74, ¶ 11, 194 Vt. 499, 82 A.3d 1184 ("To properly assert the defense of insufficient service of process, defendant needed to either file a motion to dismiss prior to the final [RFA] hearing or raise the defense at the hearing itself.").  Indeed, the court followed up on defendant's statement that he had been served "at 4:15 yesterday," by asking defendant if he had contacted a lawyer.  Defendant responded that he had tried to contact

a lawyer without success. The court asked, "so what is your request for the court?" Defendant represented that he was prepared to move forward despite service the day before.

¶ 13. Notice of RFA hearings is required under the statute and Vermont Rule for Family Proceedings 9, but neither requires a minimum amount of time to be served before a hearing. 15 V.S.A. § 1103(b) ("[T]he court shall grant relief only after notice to the defendant and a hearing."); V.R.F.P. 9(j) (same). It is undisputed that defendant received notice before the hearing. Defendant arrived at the hearing at the scheduled time, brought exhibits with him and did not express a concern that he was unable to prepare a defense in time. Defendant affirmatively indicated he had enough to prove he had not stalked plaintiff. Accordingly, defendant has failed to establish a deprivation of notice that would rise to the level of plain error.

¶ 14. Relatedly, defendant contends that, based on his "clearly expressed" desire to obtain counsel, the court should have continued the hearing even in the absence of a request from defendant that it do so. The RFA statute was designed to facilitate "uncomplicated proceedings that allow an abused family member to obtain immediate relief without the need for counsel, advance pleadings, or a full-blown evidentiary hearing." Rapp v. Dimino, 162 Vt. 1, 4, 643 A.2d 835, 837 (1993). Family Rule 9(h) provides for continuances in the event one party is represented by counsel and fails to give the opposing party a reasonable opportunity to retain counsel prior to the hearing. V.R.F.P. 9(h). That circumstance was not present here because neither plaintiff nor defendant was represented by counsel below. Defendant did ask whether he would have a "chance to get a lawyer" in the event plaintiff prevailed. The court explained that it would issue a final order based on evidence at the hearing if it determined that plaintiff had met her burden. It also explained that defendant could stipulate to a no-findings final order "so there would be no court finding that anybody abused anybody or stalked anybody." Defendant indicated that he did not want that and instead wanted to proceed with the hearing. Under these circumstances, the trial court did not commit error.

6

¶ 15.   Defendant next argues that the court deprived him of fundamental rights by not giving him an opportunity to cross-examine plaintiff.  Defendant concedes that he did not preserve this issue.  Unpreserved challenges to evidentiary rulings are reviewed for plain error.  State v. Brochu, 2008 VT 21, ¶ 71, 183 Vt. 269, 949 A.2d 1035.  Defendant has failed to establish that he was prejudiced by the alleged error.  See Hanson-Metayer v. Hanson-Metayer, 2013 VT 29, ¶ 41, 193 Vt. 490, 70 A.3d 1036.  Defendant fails to describe what testimony plaintiff offered that he would have cross-examined other than what he sought to undermine or question with his own testimony.  Defendant admitted that he put the dog in his truck at one point and that he and plaintiff fought.  He admitted going in plaintiff's house uninvited and taking photographs "to build a case for the custody of the dog."  He proffered a photo of a rusted brake rotor to undermine plaintiff's claim that he was driving by her house.  He also admitted to the incident at PetSmart, though he asserted that plaintiff's father assaulted him, an accusation the court found irrelevant.  Defendant testified that plaintiff was retaliating against him for "pressing charges" against plaintiff's father.  Faced with these competing narratives, the court was free to make its own findings and credibility determinations.  Cabot v. Cabot, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997) ("As the trier of fact, it [is] the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence."); see Smith v. Wright, 2013 VT 68, ¶¶ 24-25, 194 Vt. 326, 79 A.3d 876 (characterizing defendant's challenge to plaintiff's testimony at RFA hearing in relation to complaint as "[e]ssentially" challenge to sufficiency of evidence to support RFA order).

¶ 16.   Defendant cites us to dicta from McCool v. Macura, which states that "the wholesale prohibition of cross-examination raises concerns regarding the fairness of a proceeding because courts must provide each side a meaningful opportunity to challenge the other's evidence." 2019 VT 85, ¶ 5 n.4, 211 Vt. 263, 224 A.3d 847 (quotation omitted).  However, unlike in McCool, defendant failed to alert the court that he wished to cross-examine plaintiff.  Having

7

failed to put the court on notice that he wanted to cross-examine plaintiff, there was no "wholesale prohibition" of a "meaningful opportunity to challenge the other's evidence." Id.

¶ 17. Defendant's final contention is that the court allowed plaintiff to testify to facts not alleged in the pleadings, violating his fundamental right to fair notice of the accusations against him. Defendant argues that plaintiff's testimony concerning his trip to Maine and events taking place on dates other than those detailed in the affidavits should have been struck because those events were not raised in the complaint.

¶ 18. Defendant did not preserve this argument. Defendant contends that his bare statement that plaintiff's affidavits revealed "inconsistencies" with her testimony at the hearing preserved the issue. This statement falls short of putting the trial court on notice with an objection "made at the time the evidence was offered" with a "clear statement of the matter to which he objects and the grounds of the objection." In re Est. of Peters, 171 Vt. 381, 390, 765 A.2d 468, 475-76 (2000) (quotations omitted); see V.R.E. 103(a)(1) ("In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context.").

¶ 19. Even if defendant had preserved this argument, we would still affirm. Plaintiff alleged in her pleadings that defendant "had demanded [that] [plaintiff] will not date or be intimate with anyone else."[3] Plaintiff testified, for the first time, that defendant "drove all the way to Maine" to confront someone with whom she had been intimate, and "to tell them that I was a bad person and they ought to know things about me, and confront them to tell them things about me." The court later asked defendant why he visited Maine and defendant conceded that he went to Maine to speak with a mutual friend about plaintiff. Defendant also conceded to driving by plaintiff's house and seeing plaintiff's sister and her kids in the front yard and pulling in plaintiff's

_____

[3] Defendant conceded that he received the complaint and affidavits before the hearing.

8

driveway on two other occasions. Plaintiff's testimony did not exceed the scope of her complaint. Island Indus., LLC v. Town of Grand Isle, 2021 VT 49, ¶ 24, 215 Vt. 162, 260 A.3d 372 ("All that is required under Vermont's extremely liberal notice-pleading standard, is a complaint with a bare bones statement that merely provides the defendant with notice of the claims against it[.]" (citation omitted) (quotations omitted)).

¶ 20.    Plaintiff was not required to detail every allegation in her pleadings. See Colby v. Umbrella, Inc., 2008 VT 20, ¶ 9, 184 Vt. 1, 955 A.2d 1082 ("While plaintiff did not provide evidence that the State remunerated her, at the pleading stage, plaintiff was merely required to give notice to defendants of the claims against them."). We accord trial courts considerable discretion in exercising control over the mode and order of interrogating witnesses and evidence presentation, and are particularly sensitive to that discretion in the RFA context. Varnum, 155 Vt. at 390, 586 A.2d at 1115; see Rapp, 162 Vt. at 4, 643 A.2d at 836-37. The court was free to weigh the competing accounts of what were, essentially, undisputed events and make credibility determinations of the witnesses. Cabot, 166 Vt. at 497, 697 A.2d at 652. We conclude that the court committed no error in not striking portions of plaintiff's testimony. Smith, 2013 VT 68, ¶¶ 24-25.

¶ 21.    The family division's conclusions are supported by the findings, which in turn are supported by the evidence. Lanfear v. Ruggerio, 2020 VT 84, ¶ 38, 213 Vt. 322, 254 A.3d 168. We therefore see no reason to disturb its order.

Affirmed.

FOR THE COURT:

_____

Associate Justice

9