### Katherine M. COATES v. James D. COATES

[769 A.2d 1]

No. 99-457

July 7, 2000. Defendant James Coates appeals a Windham Family Court decision granting plaintiff Katherine Coates' application for a final order for relief from abuse against defendant, arguing that plaintiff did not meet the burden of proof to prove abuse. We reverse.

The following evidence was presented at a hearing on plaintiff's application. The parties were married in Florida and had a daughter in April 1993. A Florida family court order dissolved the marriage in May 1996. Plaintiff was awarded sole custody of daughter, pursuant to the court's finding that shared parental responsibility would be detrimental to daughter as defendant "has a long history of mental and physical problems that would prevent him from meaningful participation in deciding major issues affecting the child's life." The court also granted plaintiff's request to relocate with daughter to Vermont, but required that she provide defendant her address and telephone number. Defendant was

allowed supervised visits with daughter in Vermont, on the condition that he give forty-eight hours notice to plaintiff. He was also allowed telephone communication with daughter three times a week.

After plaintiff and daughter relocated to Vermont in 1996, defendant called on a weekly basis. Defendant and plaintiff spoke when he called for daughter, and plaintiff listened in on defendant's conversations with daughter without objection from defendant. Defendant occasionally sent daughter appropriate gifts, and plaintiff assisted daughter in sending cards and photographs to defendant.

Sometime in late 1996 or 1997, defendant sent plaintiff and daughter three handwritten songs entitled "Christmas Songs from Hell." The songs contained graphic descriptions of violence and threats of death and murder set to Christmas carol tunes. Plaintiff testified that these arrived without warning, that they disgusted her, and that she did not share them with daughter. Defendant testified that these songs were mere parodies of Christmas carols with macabre themes, and that he read them to plaintiff over the phone and sent them to her at her request. During a telephone call on another occasion, defendant described to daughter the pain and bleeding he experienced when he had a tooth pulled, which plaintiff thought inappropriate for daughter to hear.

In approximately June 1999, defendant informed plaintiff and daughter that he was planning to visit them in Vermont. Plaintiff testified that defendant said that he was going to "take [daughter] for a ride" and "fix things in her house," and that he was going to petition for joint custody of daughter. Plaintiff testified that she was afraid to tell defendant that he could not visit her or daughter. On July 1, 1999, plaintiff applied to the Windham Family Court for a temporary relief from abuse order against defendant. The application was granted and the order served on defendant in Florida on July 8, 1999.

At an August 27, 1999, hearing, plaintiff requested a permanent relief order. Both plaintiff and defendant testified and were represented by counsel. In addition to the evidence discussed above, the court allowed plaintiff — over defendant's objection — to testify as to physical and psychological abuse she suffered prior to and during their marriage. Plaintiff also testified that defendant similarly abused daughter. The court allowed the testimony to "put in context the plaintiff's sense of fear."

In its September 3, 1999, written decision, the court granted plaintiff a relief-from-abuse order. The court found no abuse against daughter and allowed defendant supervised visitation pursuant to conditions in its order. Defendant appeals, arguing that the court's decision was clearly erroneous because plaintiff did not carry her burden of proof alleging abuse.

"We note at the outset that when reviewing the factual findings of a trial court we view them in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence, and we will not set aside the findings unless they are clearly erroneous." *Stickney v. Stickney*, 170 Vt. 547, 548, 742 A.2d 1228, 1230 (1999) (mem.). We will uphold factual findings if supported by credible evidence, and the court's conclusions will stand if the factual findings support them. See *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998). However, conclusions that are not supported by the court's findings cannot be sustained. See *id.*

In a relief-from-abuse hearing, the plaintiff has the burden of proving abuse by a preponderance of the evidence. "Abuse" is defined as the occurrence of one or more of the following acts: "(A) attempting to cause or causing physical harm; (B) placing another in fear of imminent serious physical harm." 15 V.S.A. § 1101(1). Pursuant to 15 V.S.A.

§ 1103(c), if the court finds that the defendant has abused the plaintiff and that there is a danger of further abuse, the court shall make such orders as it deems necessary to protect the plaintiff, the children or both. Subsection (h) provides: "[w]hen findings are required under this section, the court shall make either written findings of fact or oral findings of fact on the record." *Id.* § 1103(h). It is undisputed that the court made no oral findings following the merits hearing. And, in this case, the court's written findings are not supported by credible evidence and are inadequate to support a relief-from-abuse order.

Here, in their entirety, are the court's only findings that can be said to pertain to an abusive situation:

> 7. On one occasion the defendant sent the plaintiff and the minor child a series of three songs, in his own handwriting, entitled "Christmas Songs from Hell." The songs contained graphic descriptions and threats of death and murder.

> 8. In approximately June 1999, the defendant began telling both the plaintiff and the minor child that he was planning to come visit them. He told the plaintiff that he was going to come into her house and begin fixing things for her. The plaintiff was afraid to say no to the defendant. The defendant told the plaintiff that he wanted to petition the Court to modify custody. The plaintiff became increasingly alarmed and frightened.

Here is the trial court's conclusion:

> The Court finds that the defendant has placed the plaintiff in fear of imminent serious physical harm and grants the request for relief.

This finding is based on the letter to plaintiff which clearly is inflammatory and put the plaintiff in fear of physical harm.

The court concluded that defendant placed plaintiff in fear of imminent serious physical harm based on the songs defendant sent plaintiff at least a year-and-a-half before his announced visit.* The sole testimony from plaintiff concerning her reaction to the song lyrics was the simple statement that she was "kind of disgusted."

The *only* testimony from plaintiff about what defendant did that frightened her was in response to the question: "Does it scare you when the defendant says he is going to come up and petition the judge for shared custody of her (their daughter)?" Plaintiff answered, "Yes."

At the hearing, after the close of evidence, the court noted that plaintiff "subjectively believes that she's in fear" but requested proposed findings from both sides as to "how that relates to any evidence regarding threats, coercions, past behavior." Unfortunately, the trial court's findings do not address the relationship, if any, between the parties' past history and plaintiff's subjective belief that she fears defendant.

The trial court could not properly find, on the basis of evidence before it, that defendant had placed plaintiff in fear of imminent serious physical harm. Plaintiff never testified she feared imminent physical harm from defendant. Her testimony primarily focused on her desire to deny defendant any visitation with his daugh-

_____
*The trial court did not reconcile the conflicting testimony between defendant and plaintiff as to the date the song lyrics were sent. Plaintiff testified that they arrived "about a year and a half ago," and defendant testified he sent them in "November — late November of '96," two-and-a-half years before the plaintiff sought a protective order.

ter, notwithstanding the fact that his visitation would be supervised pursuant to a prior Florida divorce order. With no evidence that plaintiff was in fear of imminent serious physical harm, there was no basis for an abuse-prevention order.

This is not to deny plaintiff's fear that defendant would become a more active part of their daughter's life. But it serves no purpose to mislabel her fear of a custody fight as a fear of imminent serious physical harm or to misapply the law to accommodate that fear.

The trial court abused its discretion when it issued the relief-from-abuse order.

*Reversed.*

**Amestoy, C.J.,** dissenting. The majority concludes that plaintiff feared a custody fight, not imminent serious physical harm. I believe that the trial court was in a much better position to determine what plaintiff feared, and that the court did not abuse its discretion in determining that defendant "has placed the plaintiff in fear of imminent serious physical harm." I, therefore, respectfully dissent.

A family or household member may seek or obtain a relief from abuse order by proving that another family or household member has abused her or him. See 15 V.S.A. § 1103. One of the definitions of "abuse" is "placing another in fear of imminent serious physical harm." 15 V.S.A. § 1101(1)(B). Plaintiff sought a temporary relief from abuse order when it became apparent that defendant was intending to make his first visit to plaintiff and daughter since their relocation to Vermont in 1996. The court found that plaintiff "became increasingly alarmed and frightened" about defendant's planned visit. The court determined that plaintiff's fear of imminent serious harm was based on a series of three songs — each in defendant's handwriting — which defendant had sent to plaintiff. Defendant, while conceding that the songs are

"tasteless," argues that they are "not in a serious style or to be taken seriously." The effect of the songs on plaintiff, when coupled with defendant's announced intention to pay his first visit to plaintiff and daughter, was a matter for the court to weigh in determining whether defendant's acts had placed plaintiff in imminent serious physical harm. See *In re B.M.*, 165 Vt. 194, 205-06, 679 A.2d 891, 898-99 (1996) (holding family court has discretion to adopt testimony of domestic violence). I cannot say the court erred, especially upon review of the exhibits before the Court. One example will suffice, a "parody song" sung to the tune of "Jingle Bells":

> Jingle bells, banshee yells,
> Santa's gone insane,
> He's got a knife,
> Gonna' take some life,
> In a one horse open sleigh, hey;
>
> Jingle Bells, bloody smells
> Gut rending curdling pain,
> Running through the snow,
> Screaming as you go,
> Bleeding as you go,
> Santa's gone insane;
>
> Slashing to and fro,
> In a one horse open sleigh,
> Dead children in the snow,
> You might just die today;
>
> Santa's looking for you now,
> He'll gut you like a pig,
> Butcher you like a cow,
> Then cook you on a stick —
> ooooh.

Although the majority is correct that plaintiff never testified directly that she feared imminent serious physical harm from defendant, the dynamics of domestic abuse ought to make us particularly cautious in substituting our judgment — on the basis of a cold record — for that of the judge who heard the testimony. There are many reasons why the testimony of the

person alleging abuse or fear of abuse may be circumspect or incomplete. Indeed, in criminal prosecutions of domestic abuse, some prosecutors will not dismiss a complaint notwithstanding the reluctance of a victim to testify. See Note, *No-Drop Policies in the Prosecution of Domestic Violence Cases: Guarantee to Action or Dangerous Solution?*, 63 Fordham L. Rev. 853, 858 (1994) (noting that "the policy represents official acknowledgment of the fear and ambivalence victims often feel when asked to testify against their batterers").

The trial judge is uniquely suited — and certainly better suited than this Court — to evaluate the testimony of witnesses in relief from abuse cases. See *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998) ("Given its unique position to assess the credibility of witnesses and weigh the evidence, we will not set aside the court's findings if supported by the evidence, nor its conclusions if supported by the findings."). I cannot say, on a record that includes mailings from defendant to plaintiff that graphically threaten death and murder, that the court erred in finding a sufficient basis upon which to issue a final order for relief from abuse. Accordingly, I dissent. I am authorized to state that Justice Morse joins in this dissent.