EATON, concurring.
¶ 29. I feel compelled to concur in the majority opinion, given the trial court's factual findings. It is not our role on appeal to second-guess the trial court's factual findings. Coates v. Coates, 171 Vt. 519, 520, 769 A.2d 1, 2 (2000) (mem.). I cannot say the court's factual findings made below were clearly erroneous.
¶ 30. At the same time, the dire predictions made by Justice Robinson in her concurrence in the previous appeal have come or are coming true:
By all appearances, this wrenching situation is far from over, and the next chapter is close at hand. The trial court ordered that on or before August 16, 2016, unless the child has already begun routine visits with his mother as a result of the therapy ordered by the court, the child shall recommence treatment with a specified therapist with a goal towards reunification with his mother. Notwithstanding this order, and notwithstanding the trial court's findings that father and stepmother have victimized this child by "marinating" him in negativity toward mother, at oral argument, father's counsel continued to question whether resumption of contact with mother will prove to be in the child's best interests, and held out the possibility that evidence may yet emerge to prove the allegations decisively rejected by the trial court. Given father's posture on appeal, and the trial court's findings as to the risk that the child will not be able to withstand father's and stepmother's further alienating behavior, I'm deeply skeptical that the trial court's hopes of reestablishing the child's relationship with his mother will bear fruit as long as the child lives with father and stepmother.
Knutsen v. Cegalis, 2016 VT 2, ¶ 45, 201 Vt. 138, 137 A.3d 734 (Robinson, J., concurring). It does not matter how sternly this Court chastises father and stepmother for continuing to engage in alienating behavior or how many warning shots are fired across their bow; the alienation continues.
¶ 31. The trial court reached its decision in this, and in the previous appeal, by placing considerable weight on 15 V.S.A. § 665(b)(4), "the quality of the child's adjustment to the child's present housing, school, and community and the potential effect of any change." Recognizing the upheaval that changing physical rights and responsibilities from father to mother would cause to the child, the court elected not to do so. I respect those decisions and the difficulty with which they were reached, given the history of alienating behavior by father and stepmother.
¶ 32. But at some point, we must recognize that continuing to give great weight to that factor creates a spiral that the noncustodial parent can never overcome. Many relocations involve a violent upheaval to the children involved. At the same time, we cannot accept ongoing alienating behavior, which in this case has resulted in a nearly complete disruption of mother's ability to be involved in her son's life, because putting a stop to it by changing *190 parental rights will result in an upheaval to the child. To allow this only serves to reward those who are most skillful at alienation. In my view, the point where 15 V.S.A. § 665(b)(4) must yield to other best-interest considerations and to mother's constitutionally protected liberty interest in the parent-child relationship is what is now close at hand.
¶ 33. I am authorized to state that Justice Robinson joins this concurrence.