NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 85

No. 2019-019

| | |
|---|---|
| Carrie McCool | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Family Division |
| | |
| Joshua Macura | October Term, 2019 |

Kirstin K. Schoonover, J.

Carrie McCool, Pro Se, Barre, Plaintiff-Appellee.

Craig S. Nolan of Sheehey Furlong & Behm P.C., Burlington, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson and Eaton, JJ., and Skoglund, J. (Ret.) and
Howard, Supr. J. (Ret.), Specially Assigned

¶ 1.    **SKOGLUND, J. (Ret.), Specially Assigned.**    Defendant appeals a final relief-from-abuse (RFA) order issued by the Washington County family division of the superior court. We conclude that the record does not support the court's determination that defendant abused plaintiff by placing her in fear of imminent serious physical harm. Accordingly, we vacate the RFA order.

¶ 2.    The parties had an intimate relationship and began living together in 2011 in a house originally owned by plaintiff's family but later purchased by the parties. The relationship ended in December 2017. In June 2018, plaintiff filed a motion for relief from abuse, asking the Orange County family division to order defendant to stay away from her and the parties' home. A

final RFA hearing was held on June 26, 2018. Following testimony from the parties, the Orange County family division concluded that defendant had engaged in abuse by stalking, and that there was danger of further abuse. Defendant's counsel asked the court to enter a continued temporary order rather than a final order so that defendant did not lose his job as a police officer.[1] The court ultimately decided, with the agreement of both parties, to issue an extended temporary order with the same provisions that would have been in a final order, for a period of six months.

¶ 3.    On December 18, 2018, at the end of the six-month period, the same judge in the Orange County family division held a hearing on plaintiff's request to make the order final and extend it. Following the testimony of both parties, the court declined to extend the RFA order, stating that the parties at that point were engaged primarily in a property dispute. The court stated that it would not issue a further extended order because it could not find there was a danger of further abuse. The court informed the parties "you'll have no orders in place but need to engage in behavior . . . appropriately."

¶ 4.    On December 19, 2018, the day after the Orange County family division denied plaintiff's motion to extend the previous RFA order, plaintiff filed a new request for an RFA order in the Washington County family division. In her affidavit, she alleged that a few hours after the previous day's hearing, defendant entered her residence without her consent to retrieve his belongings. Plaintiff further alleged that defendant got inside the house through forced entry[2] and disabled the outside security cameras. She stated that defendant had a history of restraining her and that the previous RFA order had expired only hours before he entered her residence.

---

[1] Plaintiff was also a law enforcement officer at one time. At the time of these proceedings, she was working as a police dispatcher at the same police department where defendant worked.

[2] Defendant testified that the sliding glass door at the back of the house was unlocked and offered video evidence of his entry to show that the door was unlocked. The court declined to admit the video evidence but did not assume that defendant's entry into the house was forced.

¶ 5. The Washington County family division granted a temporary RFA order and scheduled a hearing for January 2, 2019, at which time both parties testified. Following the hearing, the court issued a final RFA order based on the court's determination that defendant had abused plaintiff by placing her in fear of imminent serious physical harm. Defendant appeals that order, arguing that: (1) the record does not support the court's determination that plaintiff was placed in reasonable fear of imminent serious harm; (2) the court failed to make findings concerning any danger of future abuse[3]; and (3) the court abused its discretion by not allowing him to cross-examine plaintiff,[4] unfairly limiting defendant's direct testimony, and not admitting relevant video evidence of defendant entering plaintiff's residence.

¶ 6. On appeal "we review the family court's decision to grant or deny a protective order only for an abuse of discretion, upholding its findings if supported by the evidence and its conclusions if supported by the findings." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513, 955

---

[3] The court did not address the danger of future abuse in its oral findings on the record, but it checked the box on the RFA final order form indicating that there was danger of future abuse.

[4] After the court finished questioning the unrepresented plaintiff concerning the nature and circumstances of her complaint, defendant's attorney indicated that he wanted to cross-examine plaintiff. The court responded as follows: "We don't generally allow that to happen. Why don't I hear from your client first, and then, if we need the opportunity for cross-examination, the court will allow it." Vermont Rule of Evidence 611(a) generally directs the court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" to make the "presentation orderly and effective," to "avoid needless consumption of time," and to "protect witnesses from harassment or undue embarrassment." Although this rule encompasses the authority "to set reasonable limits on the consumption of time in examining witnesses," any "limits must be reasonable and sufficiently flexible to ensure that important evidence is not excluded due to artificial time constraints." Varnum v. Varnum, 155 Vt. 376, 390, 586 A.2d 1107, 1115 (1990). The nature of RFA hearings unquestionably warrants caution to ensure that witnesses are not harassed; in some cases, questions might need to be posed through the trial judge. But the wholesale prohibition of cross-examination raises concerns regarding the fairness of a proceeding because courts must "provide each side a meaningful opportunity to challenge the other's evidence." Frizado v. Frizado, 651 N.E.2d 1206, 1211 n.5 (Mass. 1995), abrogated on other grounds by Zullo v. Goguen, 672 N.E.2d 502 (Mass. 1996) (stating that defendants in civil cases have general right to cross-examine witnesses against them, although in abuse-prevention proceedings such right may be curtailed for good cause shown). We need not consider this claim of error here, however, given our resolution of the appeal on defendant's first claim of error.

A.2d 1135. Our review of legal conclusions is "nondeferential and plenary." Fox v Fox, 2014 VT 100, ¶ 9, 197 Vt. 466, 106 A.3d 919.

¶ 7. We first consider whether the evidence was sufficient to support the family division's determination that defendant's conduct placed plaintiff in fear of imminent serious physical harm. "In a relief-from-abuse hearing, the plaintiff has the burden of proving abuse by a preponderance of the evidence." Coates v. Coates, 171 Vt. 519, 520, 769 A.2d 1, 2-3 (2000) (mem.). In relevant part, abuse is statutorily defined as placing a family or household member "in fear of imminent serious physical harm." 15 V.S.A. § 1101(1)(B). Here, plaintiff testified that defendant had a history of restraining her and that she was fearful he would continue to restrain her. Noting that defendant had turned off the security cameras, plaintiff explained that she would not know if he was in the house, which made her very concerned for her safety.

¶ 8. The Washington County family division acknowledged that defendant had not caused plaintiff physical harm or attempted to stalk her but concluded that he had placed her in fear of imminent serious physical harm by showing up uninvited at her residence mere hours after plaintiff's request to extend the prior RFA order had been denied. The court's conclusion that defendant had placed plaintiff in fear of imminent serious physical harm was based in part on defendant's representation that he would go to plaintiff's residence only at a mutually agreeable time.[5] In support of its conclusion, the court noted that defendant had restrained plaintiff on occasions in the past, that he had not lived at the residence for over six months, and that, upon entering the residence on this occasion, he turned off the surveillance cameras.

¶ 9. Defendant argues that his mere presence on the property he jointly owned with plaintiff cannot be the basis of a final RFA order, given that no court order prevented him from

_____

[5] At the December 18, 2018 hearing in which the Orange County family division declined to extend the earlier RFA order, defendant responded in the affirmative when asked by his counsel whether, if there was no order in place, he would retrieve his property at a time mutually agreeable to plaintiff and him.

being on the property. This argument begs the question of whether he placed plaintiff in fear of imminent serious harm. On this point, defendant asserts that plaintiff failed to demonstrate that any fear she had of imminent serious physical harm was objectively reasonable under the circumstances. See Coates, 171 Vt. at 521, 769 A.2d at 3 (concluding that trial court could not find that defendant had placed plaintiff in fear of imminent physical harm when plaintiff never testified that defendant had done so and court's findings failed to "address the relationship, if any, between the parties' past history and plaintiff's subjective belief that she fears defendant").

¶ 10. We agree that, as a matter of law, the record does not support a conclusion that plaintiff had an objectively reasonable fear of imminent serious physical harm. Apart from plaintiff's testimony that defendant's conduct in entering her residence placed her in fear, the Washington County family division relied upon the parties' past history and the fact that defendant entered the residence and turned off the outside security cameras without plaintiff's consent despite agreeing earlier the same day that he would retrieve his personal belongings from plaintiff's residence only at a time agreed upon by the parties. With respect to defendant's history of restraining plaintiff, the family division relied upon plaintiff's testimony from the previous RFA proceeding that defendant had restrained her on occasion by bearhugging her, which defendant claimed he did to prevent her from doing something dangerous.

¶ 11. At that June 2018 hearing, however, the Orange County family division explicitly concluded that none of defendant's conduct—including the bearhugs—had placed plaintiff in fear of imminent serious physical harm; rather, the court based its temporary RFA order on defendant's having stalked plaintiff.[6] Later, at the December 2018 hearing, the court denied plaintiff's motion

---

[6] In the dissent's view, we are inaccurately suggesting that "the Orange County court had rejected defendant's restraint of plaintiff as a basis for the RFA order." Post, ¶ 20. We suggest no such thing. Our point is that the Orange County family division explicitly found that the past bearhug incidents would not place "someone in fear of imminent serious physical harm" and that there were not "any kinds of threats of imminent serious physical harm." As noted above, the Orange County family division did find abuse by stalking, finding that the bearhug incidents—

to extend the RFA order, finding that the parties' dispute at that point was largely a conflict about personal property. The court found that the parties had tried to avoid each other and credited defendant's testimony that he never told plaintiff he would come back to her residence any time he wanted to retrieve his belongings.

¶ 12. Notably, the undisputed evidence in this case was that defendant went to plaintiff's residence at a time when he knew she would be at work and not at the house, specifically so that he could avoid her. Earlier that day, defendant emailed plaintiff to try and find a time when he could pick up the rest of his belongings, which he been attempting to do for the previous six months. Plaintiff responded that she could not contact him until an internal police investigation was completed, with no indication of when that would occur. A couple hours before entering plaintiff's residence, defendant sent the last email in that chain, saying that if her investigation was anything like his, it would take a while to complete.

¶ 13. Although defendant's decision to enter plaintiff's residence without her consent may have shown "bad judgment," as the court indicated, the undisputed evidence[7] demonstrates that defendant was seeking to avoid rather than confront plaintiff. Regarding the security cameras, the undisputed evidence was that defendant disabled security cameras that monitored only the exterior of the house. Given that defendant had never physically harmed plaintiff, that there had not been any incident of alleged physical restraint in almost a year, and that defendant entered plaintiff's residence when he knew she was not there so as to avoid her, there was insufficient evidence in the record, as a matter of law, to support a conclusion that defendant's conduct in

combined with the degree of oversight and demanded accountability that defendant displayed toward plaintiff—amounted to surveilling or monitoring that "would cause a reasonable person to fear for her safety."

[7] The dissent states that we are crediting defendant's testimony about what happened by describing defendant's efforts to retrieve his belongings from plaintiff's residence at a time he knew she would not be home. These are undisputed, not modifying, facts.

entering her residence to retrieve his personal belongings placed plaintiff, from an objectively reasonable standpoint, in fear of imminent serious physical harm.

¶ 14.    Because the record does not support the court's conclusion that defendant abused plaintiff, we need not consider defendant's arguments that the court failed to make findings on the danger of future abuse and that it deprived him of a fair opportunity to make his case at the RFA hearing.

The family division's January 2, 2019 final relief-from-abuse order is vacated.

FOR THE COURT:

Associate Justice (Ret.), Specially Assigned

¶ 15.    **REIBER, C.J., dissenting.**    I would affirm because the record does support the trial court's conclusion that plaintiff had an objectively reasonable fear of imminent serious physical harm, and the trial court did not abuse its discretion in granting the relief-from-abuse (RFA) order.  I respectfully dissent.

¶ 16.    We review a trial court's decision to grant an RFA order for abuse of discretion, "upholding its findings if supported by the evidence and its conclusions if supported by the findings."  Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513, 955 A.2d 1135.  I emphasize this deferential standard.  "In matters of personal relations, such as abuse prevention, the family court is in a unique position to assess the credibility of witnesses and weigh the strength of evidence at hearing."  Id.  "[T]he dynamics of domestic abuse ought to make us particularly cautious in substituting our judgment—on the basis of a cold record—for that of the judge who heard the testimony."  Coates v. Coates, 171 Vt. 519, 522, 769 A.2d 1, 5 (Amestoy, C.J., dissenting).  Moreover, in assessing whether the evidence sufficiently supports the findings, we must view the

evidence in the light most favorable to the <u>prevailing</u> party, <u>excluding</u> the effects of modifying evidence. <u>Cabot v. Cabot</u>, 166 Vt. 485, 497, 697 A.2d 644, 652 (1997).[8]

¶ 17.   The record here supports the court's exercise of discretion.  Promptly upon the expiration of the six-month RFA order, defendant entered plaintiff's home without her consent and turned off the security cameras.  This was done immediately following the defendant's representation to the Orange County family division that he no longer lived at plaintiff's residence, he was willing to retrieve the remainder of his belongings from the property at a mutually agreeable time, and he had no access to the security cameras and no interest in gaining access.

¶ 18.   Most critically, this was done within the context of a history of abuse—a history that the majority downplays.  The Orange County family division held in June 2018 that defendant had abused plaintiff by stalking her.  Specifically, the court found that defendant had physically restrained plaintiff without her consent and had refused to assure plaintiff that he would not restrain her in the future.  The court said these instances of physical restraint were "part of the backdrop" of the parties' situation.  The court also found that defendant tracked plaintiff's movements with the property's security cameras and "interrogate[d] and question[ed]" her about her activities.  The court concluded that "those things together . . . the court finds would put the plaintiff in—a reasonable person should know that it would cause a reasonable person to fear for her safety."  The court held that defendant's conduct satisfied the statutory definition for stalking and provided the basis for an RFA order.  See 15 V.S.A. § 1101(1)(D) (providing "[s]talking" as one of several definitions of abuse under RFA statute); 12 V.S.A. § 5131(6) (defining stalking as "to engage

---

[8] The majority suggests that defendant engaged in an ill-conceived but otherwise relatively benign effort to retrieve his belongings from the home he previously shared with plaintiff, taking pains to avoid doing so at a time when she would be present.  See <u>ante</u>, ¶¶ 12-13.  In describing the facts this way, the majority essentially credits defendant's testimony about what happened— relying on modifying evidence and implicitly finding defendant credible.  The inference the majority draws from defendant's testimony—that defendant did not pose an immediate threat—is neither a fact nor undisputed.  It is a conclusion that the trial court rejected and the record does not compel.

purposefully in a course of conduct directed at a specific person that the person engaging in the conduct knows or should know would cause a reasonable person to . . . fear for his or her safety").

¶ 19.    In sum, the record shows a history of intimidating and controlling behavior by defendant, and that history, including the physical restraints and misuse of the security cameras, provided the basis of an RFA order against defendant.  The order was not extended following defendant's representation that he no longer lived at the residence, he would work with plaintiff to retrieve his belongings, he had no access to the security cameras, and he did not seek access to the cameras.  On the very day that defendant made these representations, he entered defendant's home without her consent and immediately turned off the security cameras that had been central to the prior RFA order.  All of these facts taken together provide a basis for the Washington County family division to conclude that plaintiff had an objectively reasonable fear of imminent serious physical harm.  See 15 V.S.A. § 1101(1)(B) (defining abuse as "[p]lacing another in fear of imminent serious physical harm"); see also Raynes, 2008 VT 52, ¶ 8 (explaining abuse-prevention statute "addresses the pattern of controlling behavior that distinguishes intimate abuse from other forms of violence by providing a unique legal remedy, injunctive in nature, aimed at ending the cycle of domestic violence before it escalates").

¶ 20.    The majority reasons that the Washington County court's conclusion was in error because the Orange County court had rejected defendant's restraint of plaintiff as a basis for the RFA order.  See ante, ¶ 11.  More accurately, the Orange County court rejected defendant's restraint of plaintiff as a basis for finding that his conduct met two of the statutory definitions for abuse.  The Orange County court said that defendant's conduct, including the restraints, did not cause or attempt to cause her physical harm, and he did not threaten her with imminent serious physical harm.  See 15 V.S.A. §§ 1101(1)(A) (defining abuse as "[a]ttempting to cause or causing physical harm"); id. § 1101(1)(B) (defining abuse as "[p]lacing another in fear of imminent serious physical harm").  But then the Orange County court held that defendant's conduct—including the

9

physical restraints—did meet the basis for finding defendant stalked defendant, which is a third definition for abuse pursuant to the statute. Id. § 1101(1)(D) (defining "abuse" as "[s]talking"); 12 V.S.A. § 5131(6)(A) (defining "[s]talk"). It was entirely proper for the Washington County court to rely on the history of abuse between the parties, including the physical restraints, in holding that defendant's subsequent conduct constituted abuse.

¶ 21. Additionally, the majority notes that nearly a year had passed since any alleged incidents of physical restraint. Ante, ¶ 13. Defendant last physically restrained plaintiff in March 2018. Defendant was deployed out-of-state shortly afterward. He returned to Vermont in June 2018, and he was placed under court order that same month. That defendant did not physically restrain plaintiff during those nine months does not undercut the trial court's decision. If anything, it supports it. As soon as the external constraints on defendant's actions were lifted, he intruded into plaintiff's home and interfered with the security cameras—suggesting that only the order was restraining defendant from abusive behavior. The timing shows the reasonableness of plaintiff's fear, not the unreasonableness.

¶ 22. I respectfully dissent. I am authorized to state that Justice Robinson joins this dissent.

FOR THE COURT:

_____

Chief Justice

10