**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.        25-AP-207



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

DECEMBER TERM,   2025

Brian Tomlinson\* v. Kathleen Lovell

}    APPEALED FROM:
}    Superior Court, Lamoille Unit,
}    Civil Division
}    CASE NO. 25-ST-00429
      Trial Judge: Mary L. Morrissey

In the above-entitled cause, the Clerk will enter:

Plaintiff appeals the denial of his complaint for an order against stalking. We reverse and remand for further proceedings consistent with this opinion.

Plaintiff is a police officer in Morristown, where defendant lives. In May 2025, plaintiff filed an anti-stalking complaint alleging that in April 2023, he responded to an incident involving defendant and her relative. Afterward, defendant began posting threatening and harassing messages on Facebook targeting plaintiff and his family.

The court held an evidentiary hearing at which plaintiff and the Chief of the Morristown Police Department testified. After plaintiff finished presenting his evidence, but before defendant had an opportunity to testify, the court went into recess. It then returned and made oral findings, ultimately concluding that the evidence did not support a finding that defendant stalked plaintiff.

The court found that from September 2024 to May 2025, defendant posted a series of messages on Facebook about plaintiff.\* On September 10, 2024, defendant posted plaintiff's picture with the following message: "Killer Cop Brian. Get back in the kitchen babe." On October 4, 2024, under a picture of plaintiff, defendant posted:

---

\*    The court noted that the Facebook account belonged to a "Kei Lovell" and defendant's name was "Kathleen Lovell," and there was no evidence directly establishing that the Facebook account belonged to defendant. However, defendant informed the court that their preferred name was "Kei" and made various other statements indicating that they were the author of the messages. The court assumed for the purposes of analysis that defendant posted the messages.

Brian Tomlinson stated he had been attacked and shot multiple times. He was never attacked and never shot. He said he was shot three times. He wasn't shot at all nor injured at all. He shot at Henry several times while Henry was running away. He tried to kill Henry. Brian Tomlinson is unhinged and a psycho. He has a wife and small children.

On October 20, 2024, defendant posted plaintiff's picture and wrote: "Tried to kill a developmentally disabled kid. Left his body cam off and rejected witnesses so he could pretend he got shot. I have the evidence of what happened. Fuck you pig Brian Tomlinson try not to shoot anyone at your kids' soccer games you total freak." On the same date, defendant posted plaintiff's picture again and wrote, "Look at those eyes. Look at that face. I feel so sorry for his wife and kids. Absolute psychopath Brian Tomlinson. Go back to flipping burgers, kitchen boy."

On November 3, 2024, defendant posted a map of Morrisville with the message, "Brian Tomlinson, you lied. What you stated happened has been PROVEN to be literally impossible, not simply lies, but straight up fabrication. YOU WILL BE HELD ACCOUNTABLE, kitchen boy."

On November 10, 2024, defendant posted plaintiff's picture with the message, "Shot up my car and tried to kill my son. Like a maniac. I truly fear for the people in your life, Brian Tomlinson. You shouldn't be walking around with a loaded gun."

On November 27, 2024, defendant posted plaintiff's picture and wrote, "Brian Tomlinson, Morristown Police Department, Town of Morristown….let's talk about the lies, eh? You and your family will always know about the cowardly lies. For the rest of your sad life, you'll be known as a loser and a liar. Get back in the kitchen."

On January 16, 2025, defendant posted, "Liability. Brian Tomlinson. 'Chef.' I'm coming for your duties and oath Brian. I know about your lies Brian. We both know, don't we?"

Finally, on May 4, 2025, defendant posted:

Brian Tomlinson tried so hard to kill my son. Brian, I hope someday, that someone fires eight 40 caliber bullets into your wife or kids. I hope someday a thug commits extreme violence against your wife and her possessions. The way you did to me and my son, you absolute psycho.

The court found defendant had never directly communicated with plaintiff other than in April 2023, when they had some contact based on the events that gave rise to criminal charges against defendant's son.

The court concluded that plaintiff had failed to establish the elements of stalking. The court determined that the May 2025 post did not meet the definition of a true threat because it did not communicate a serious expression of intent to commit an act of violence toward a particular individual or group. The court found that none of the other postings contained any threatening language. The court further held that there was insufficient evidence to find that defendant

followed or monitored plaintiff. The court therefore denied plaintiff's request for an order against stalking.

On appeal in an abuse-prevention action, we will affirm the trial court's findings unless they are clearly erroneous, meaning that there is no evidence to support them. Benson v. Muscari, 172 Vt. 1, 5 (2001). We view the findings "in the light most favorable to the prevailing party below, disregarding the effect of any modifying evidence." Coates v. Coates, 171 Vt. 519, 520 (2000) (mem.) (quotation omitted). We review the court's legal conclusions, including whether defendant's statements constituted true threats, de novo. Cf. State v. Tracy, 2015 VT 111, ¶ 14, 200 Vt. 216 (stating this Court reviews constitutional decisions, including whether defendant's speech constituted "fighting words" de novo).

To issue an anti-stalking order against a defendant, the trial court must find by a preponderance of the evidence that the defendant has stalked the plaintiff. 12 V.S.A. § 5133(d). Stalking means "to engage purposefully in a course of conduct directed at a specific person" that would cause a reasonable person to fear for his or her safety or to suffer substantial emotional distress. Id. § 5131(6). A "course of conduct" is defined as "two or more acts over a period of time, however short, in which a person follows, monitors, surveils, threatens, or makes threats about another person, or interferes with another person's property." Id. § 5131(1)(A)(i).

Plaintiff first argues that the trial court erred in finding that defendant's May 2025 post did not contain a true threat. "Threatening, for purposes of the civil stalking statute, 'shall not be construed to require an express or overt threat,' but does not include constitutionally protected activity." Hinkson v. Stevens, 2020 VT 69, ¶ 41, 213 Vt. 32 (quoting 12 V.S.A. § 5131(1)). The exception for constitutionally protected activity indicates that the statute applies only to "true threats," meaning "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Id. ¶ 44 (quotations omitted); see State v. Noll, 2018 VT 106, ¶ 22, 208 Vt. 474 (explaining that true threats are not constitutionally protected). A statement may constitute a true threat even if the speaker does not intend to carry out the threat; the question is "whether an ordinary, reasonable person familiar with the context of the communication would interpret it as a threat of injury." Noll, 2018 VT 106, ¶¶ 36-37 (quotation omitted).

Viewed in context, a reasonable person would interpret defendant's May 2025 post as a threat of injury. Although couched as defendant's hope that plaintiff would have to feel how defendant felt after defendant's son was shot during his arrest, the specific and violent nature of the statement "I hope someday, that someone fires eight 40 caliber bullets into your wife or kids" suggests a premeditated plan and can reasonably be construed as an implied threat to harm plaintiff or his family. Defendant's numerous, repeated posts of plaintiff's picture and public attacks on his character over the course of at least nine months indicate a potentially dangerous fixation with him and support a conclusion that the May 2025 post was a serious threat of harm. A threatening statement does not lose its character merely by couching it in the hope that the threat will be carried out by someone else. See, e.g., Nichols v. Lafayette, No. 24-AP-288, 2025 WL 826911, at *2 (Vt. Mar. 14, 2025) (unpub. mem.), https://www.vermontjudiciary.org/media/18835 (affirming trial court's finding that angry parent's statement during school board meeting that he hoped superintendent "got hit by a bus" was true threat). The trial court therefore erred in concluding that the May 2025 post did not contain a true threat.

We further conclude that the trial court took an overly narrow view of the term "monitoring" in the statute. See Morton v. Young, 2023 VT 29, ¶ 10, 218 Vt. 96 (explaining that

whether trial court correctly interpreted civil stalking statute is question of law that this Court reviews without deference). Plaintiff argued below that defendant monitored him, pointing to defendant's repeated references to his wife and children, his presence at his kids' soccer games, and his previous career as a chef. The trial court found that defendant's statements were not sufficient to demonstrate monitoring because it was unclear where or when defendant had obtained this information. However, our case law does not require proof of the provenance of personal information to demonstrate monitoring. For purposes of the anti-stalking statute, "monitoring" simply requires a showing that defendant engaged in "tracking or collecting some form of information about the person being monitored or their activities." Hinkson, 2020 VT 69, ¶ 38. Defendant's posts indicated a knowledge of plaintiff's personal life and activities that could rise to the level of monitoring. Cf. Noll, 2018 VT 106, ¶ 42 (explaining that defendant's recitation of facts about complainant's personal life in self-published book demonstrated that defendant "continued to keep close tabs on complainant in an obsessive manner" and wanted complainant to feel as if he was watching her).

In sum, the evidence presented by plaintiff could support an order against stalking. However, because the court reached the opposite conclusion without ever hearing defendant's side of the story, we conclude that a remand is necessary so that defendant has an opportunity to present evidence.

Reversed and remanded for further proceedings consistent with this opinion.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
William D. Cohen, Associate Justice