**VERMONT SUPREME COURT**
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.     25-AP-341



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

APRIL TERM,   2026

Christine Scott v. Johnathan Scott\*

    }
    }
    }
    }

APPEALED FROM:

Superior Court, Caledonia Unit,
Family Division
CASE NO. 25-FA-02275
Trial Judge: Bonnie J. Badgewick

In the above-entitled cause, the Clerk will enter:

Defendant, self-represented, appeals from a family division order granting plaintiff's request for a final relief-from-abuse (RFA) order. We affirm.

The record reflects the following. In August 2025, plaintiff filed a complaint seeking a final RFA order against defendant—her husband—on behalf of herself and the parties' one-year-old son. Among other things, plaintiff's supporting affidavit alleged that, in June 2025, defendant set fire to the parties' house while she and their son were on the property.

The family division issued a temporary RFA order and set the matter for a final hearing. The final hearing was initially scheduled for August 20 and then rescheduled for September 3. At the September 3 hearing, defendant requested a continuance in order to secure counsel. The court granted the request and reset the hearing for September 24.

On September 18, defendant—still self-represented—filed a motion to suppress a portion of one page of plaintiff's supporting affidavit on spousal-privilege grounds. The allegation that defendant sought to suppress read: "[Defendant] has told me that he has no problem killing my mother because he hates her so much."

Both parties appeared and represented themselves at the final hearing on September 24. Plaintiff was present in the courtroom and defendant, who was then incarcerated, appeared by video. At the outset of the hearing, the court warned the parties of the need to take evidence "fairly rapidly" due to the time constraints on defendant's use of the videoconference room in the facility. The court further observed that because the temporary order issued on August 6 and the final hearing had already been continued twice, it was necessary to complete the evidentiary hearing that day in order to determine whether the temporary order should be replaced with a final order.

Plaintiff testified first, explaining that she feared for her safety and the safety of the parties' son following "what happened back on June 6th, the house fire." The court asked plaintiff to explain why she was seeking a final order, plaintiff began: "Okay. Well, [defendant] has threatened, on multiple occasions to, specifically, shoot my mom." Defendant objected. The court responded that it had reviewed defendant's motion to suppress, and was exercising its discretion to allow plaintiff's testimony under the spousal-privilege exception set forth at Vermont Rule of Evidence 504(d).

The court then turned back to plaintiff. After defendant again interjected, the court asked him what he would like the court to understand as to why a final RFA order would not be appropriate. Defendant testified to the following. In March or April, he was drugged, restrained, and raped during a trip to Maine. On the "day of the fire" in June, he "had a PTSD flashback." He remembered going to the post office and, upon returning to the parties' home, hallucinated that he was "being raped in Maine." He explained that "when I was yelling at my wife that day, I wasn't yelling at my wife. I was yelling at the ghost that was there." When he went to the bedroom, he "saw [himself] on that bed being raped," so he "flipped the bed." He did not remember anything that occurred between when he flipped the bed and when he saw plaintiff come running back into the house and he looked around and realized that the house was on fire. Defendant called 911 and said he was going to the fire department nearby. He saw plaintiff leave and "chased after her," "trying to flag her down." He "lost her" and "that's when I got hold of her and I got arrested."

Defendant then began testifying about his role as a husband and father. After some time, the court attempted to redirect defendant, explaining that the proceeding was "not about parenting," but instead about whether a final RFA order should issue, and asked him to focus his testimony on that matter. Defendant attempted to read to the court from 15 V.S.A. § 665(b), the statute that sets forth factors for the court to consider in allocating parental rights and responsibilities. The court explained that the factors defendant was referring to were matters to be taken up in the parties' pending divorce proceeding, not the instant RFA hearing.

Defendant agreed and indicated that he would like to cross-examine plaintiff regarding her affidavit. The court granted him permission to do so, but clarified that the affidavit had not been admitted and it would be relying on the testimony of the parties and the credibility of the evidence at the hearing.

Defendant asked plaintiff why she would feel that he is a threat when she indicated that he "didn't seem to be in any sort of mood" on the day of the fire. Plaintiff responded that this was because defendant is "unpredictable" and will "flip on an instant." Defendant also asked about a portion of the affidavit in which plaintiff alleged that he went to the garage, "grabbed some sort of flammable substance," and began distributing it around their house. Plaintiff responded that, when this occurred, she was in and out of the house, getting the parties' son and dog into the car. Defendant asked how she could have observed him retrieving something from the garage or pouring the flammable substance around the home if she was in and out of the house during that time. Plaintiff replied that she could "smell it."

Defendant then began asking about plaintiff's representation, in an earlier court filing, that she receives "food stamps." The court asked defendant how this was relevant, and defendant responded that he was seeking to establish that plaintiff "has some motives" and had "lied on a government application." The court explained that this was not relevant to the RFA proceeding.

Finally, the court asked defendant whether there was anything else he would like the court to understand before the close of evidence, noting that another person needed to use the video room at the facility. Defendant responded that he needed photographs of and contact with his family.

The court indicated that it was going to take a brief recess and observed that the facility's videoconferencing room "needs to be occupied by someone else." When the court returned, defendant was no longer present by video. The court explained that it was going to issue a final RFA order "based upon the testimony and evidence that has been provided." It also noted that, in light of the parties' pending divorce action, their son's youth, and defendant's incarceration, it would leave issues of parent-child contact to be addressed in the divorce proceeding. The court asked if plaintiff would be willing to provide defendant with photographs of their son. Plaintiff responded that she was, and the court indicated that it would include a provision in the order allowing her to do so through a third-party agency.

The court found that defendant abused plaintiff and their son and that there was a danger of further abuse. On this basis, it issued a final RFA order with a one-year term. This appeal followed.

Defendant's contentions on appeal fall into four categories. He requests that we overturn the final RFA order because the trial court: (1) allegedly exhibited bias against him; (2) conducted the proceedings unfairly; (3) abused its discretion in connection with several evidentiary rulings; and (4) erred in concluding that the statutory requirements for issuance of a final RFA order were satisfied. We address each category of argument in turn.

Defendant asserts that the court exhibited gender bias throughout the proceeding and ultimately ruled in favor of plaintiff because she is female. Initially, we stress that defendant does not cite any portion of the record in support of these allegations; nor does our independent review of the record and hearing transcript reveal any conduct on the part of the court that might give rise to concerns of prejudice. See DeLeonardis v. Page, 2010 VT 52, ¶ 30, 188 Vt. 94 (observing that fact that court issued rulings adverse to a party does not demonstrate bias). In any event, because defendant failed to move for disqualification of the trial judge below, this claim is not preserved for our review on appeal. Id. ¶ 31 (concluding that claim of bias unpreserved where disqualification not sought below because "[o]ur procedure provides for review of disqualification motions by the administrative judge, with review here only of the ruling of the administrative judge," and where defendant does not seek disqualification below "there is no ruling to review" on appeal); see V.R.C.P. 40(e) (setting forth process to move for disqualification of a judge); see also V.R.F.P. 9(a) (providing that V.R.C.P. 40(e) applies in RFA proceedings).*

With this understanding, we turn to plaintiff's challenge to the court's method of conducting the proceedings. Defendant argues that the trial court erred by "leading" plaintiff in her direct testimony "to set up a narrative that did not exist" and "hurry[ing]" defendant through his evidentiary presentation and cross-examination of plaintiff.

This Court affords the trial courts "considerable discretion in exercising control over the mode and order of interrogating witnesses and evidence presentation." Poss v. Alarie, 2023 VT

---

* The "Administrative Judge" referenced in DeLeonardis and Vermont Rule of Civil Procedure 40(e) is now known as the Chief Superior Judge. See State v. Putnam, 2015 VT 113, ¶ 31 n.6, 200 Vt. 257.

55, ¶ 20; 218 Vt. 479; see V.R.E. 611(a) (directing trial court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence" to make "interrogation and presentation orderly and effective for the ascertainment of the truth," to "avoid needless consumption of time," and "protect witnesses from harassment or undue embarrassment"). We "are particularly sensitive to that discretion in the RFA context." Poss, 2023 VT 55, ¶ 20. With respect to cross-examination, we have explained that "[t]he nature of RFA hearings unquestionably warrants caution to ensure that witnesses are not harassed." McCool v. Macura, 2019 VT 85, ¶ 5 n.4, 211 Vt. 263. The trial court may "set reasonable limits on the consumption of time in examining witnesses," though such limits must be "sufficiently flexible to ensure that important evidence is not excluded due to artificial time constraints." Id. (quotation omitted). Moreover, the Rules of Evidence contemplate that a court "may interrogate witnesses," as the court did here in posing questions to both plaintiff and defendant. V.R.E. 614(b).

Defendant has not identified any abuse of the trial court's broad discretion to manage the proceedings. At the outset of the hearing, the court warned the parties of the need to make efficient use of time in light of the constraints on defendant's access to the videoconference room and the need to determine whether a final RFA order should issue given earlier delays. These were not "artificial time constraints," but instead reasonable limits based on valid considerations. McCool, 2019 VT 85, ¶ 5 n.4. The record reflects that the court imposed them flexibly, and, in each instance, with due regard to the nature of the evidence at issue. Id. It allowed defendant significant opportunity to explore the lines of testimony and inquiry he wished to pursue, and inquired as to whether there was anything further he wished to present before closing the evidence. It did not err in ultimately limiting defendant's proffered testimony regarding the 15 V.S.A. § 665(b) factors. As we have explained, Vermont's Abuse Prevention Act focuses on providing "fast, temporary relief to family members in immediate danger," and RFA proceedings "are not designed to provide an opportunity to explore fully the issues surrounding custody." Rapp v. Dimino, 162 Vt. 1, 4-5 (1993). The court noted the status of the parties' ongoing divorce proceeding and did not abuse its discretion in concluding that issues pertaining to defendant's parent-child contact were best resolved in that docket. Id. at 5 (observing that "custody determinations are better resolved in proceedings concerning divorce, legal separation, parentage, or desertion and support").

To the extent defendant seeks to raise more granular challenges to the court's procedural rulings, we decline to address those arguments that are inadequately briefed. He has not identified or cited to any specific questions posed by the trial court or particular limits it imposed on cross-examination. The Rules of Appellate Procedure require that the argument in an appellant's brief contain "the issues presented, how they were preserved, and appellant's contentions and the reasons for them—with citations to the . . . parts of the record on which the appellant relies." V.R.A.P. 28(a)(4)(A). Although we afford "wider leeway" to self-represented litigants, their briefing must still satisfy the minimum standards of Appellate Rule 28(a)(4). Pcolar v. Casella Waste Sys. Inc., 2012 VT 58, ¶ 19, 192 Vt. 343 (declining to address inadequately briefed argument).

We turn to defendant's challenges to the court's evidentiary rulings. "Trial courts have broad discretion in making evidentiary rulings, and we will not revisit those rulings absent an abuse of discretion." Clark v. Bellavance, 2016 VT 124, ¶ 22, 204 Vt. 111.

Defendant argues that the court erred in denying his spousal-privilege objection under Rule 504(d) and allowing plaintiff to testify about his statements regarding her mother. Rule 504

4

establishes a general rule under which a person may prevent their spouse "from testifying in any case as to any matter which in the opinion of the court would lead to a violation of marital confidence." V.R.E. 504(b). As the court recognized, however, there are exceptions to Rule 504. Among other things, Rule 504(d) provides that there is "no privilege under this rule in any . . . civil proceeding in which the spouses are adverse parties; or, in the discretion of the court, in any other proceeding where the interests of a child of either are involved." See also Reporter's Notes, V.R.E. 504 (noting that civil-proceedings exceptions "are not limited to divorce actions" and "could apply in other types of domestic and property disputes, as well as in proceedings under the welfare laws"). This case was a civil proceeding in which the parties were adverse. Because plaintiff requested that the final order include terms pertaining to the parties' son, it was also a proceeding involving the interests of their child. The court did not abuse its discretion in declining to exclude wife's testimony on spousal-privilege grounds.

Defendant also contends that the court erred in allowing plaintiff to offer evidence in the form of text messages. However, defendant has offered no record citation in support of this argument and we cannot discern from the hearing transcript what evidence he may be referring to. We therefore decline to address this argument as inadequately briefed. Pcolar, 2012 VT 58, ¶ 19.

Finally, we turn to defendant's challenges to the final RFA order. A party seeking an RFA order bears the burden to show, by a preponderance of the evidence, that a family or household member abused them and there is a danger of further abuse. 15 V.S.A. § 1103(b), (c)(1). "[T]the court may extend any order, upon motion of the plaintiff, for such additional time as it deems necessary to protect the plaintiff, the children, or both, from abuse." Id. § 1103(e). "Our review of the issuance of RFA orders is deferential." Poss, 2023 VT 55, ¶ 8. Recognizing that "[i]n matters of personal relations, such as abuse prevention, the family court is in a unique position to assess the credibility of witnesses and weigh the strength of evidence at hearing," we review the decision below "only for an abuse of discretion, upholding [the court's] findings if supported by the evidence and its conclusions if supported by the findings." Raynes v. Rogers, 2008 VT 52, ¶ 9, 183 Vt. 513. Where an argument on appeal requires us to interpret the Abuse Prevention Act, however, we do so de novo. Wright v. Bradley, 2006 VT 100, ¶ 6, 180 Vt. 383.

We first note that defendant has not demonstrated any basis to disturb the court's factual findings. Contrary to defendant's assertion, the record simply does not reflect that plaintiff "took back what was previously stated" in response to cross-examination. And while defendant requests that we consider a statement he alleges plaintiff made following the issuance of the final RFA order, our "review is confined to the record and evidence adduced at trial," and "[o]n appeal, we cannot consider facts not in the record." Hoover v. Hoover, 171 Vt. 256, 258 (2000). It was for the trial court, not this Court, to weigh the evidence and assess the credibility of the witnesses. Raynes, 2008 VT 52, ¶ 9. Because its findings are supported by the evidence, we will not disturb them on appeal.

Defendant next contends that plaintiff did not meet her burden to demonstrate abuse because, he asserts, he had no prior domestic-assault charges involving plaintiff or the parties' child. No such showing was required. For purposes of the statute, "abuse" is defined to include "the occurrence of one or more of the following acts between family or household members: attempting to cause or causing physical harm" or "placing another in fear of imminent serious physical harm." 15 V.S.A. § 1101(1)(A) (emphasis added). Where the statutory language is unambiguous, "we apply the statute in accordance with its plain language" and do not resort to other sources to ascertain the legislative intent. Wright, 2006 VT 100, ¶¶ 6-7. Here, the

operative statutory language is clear: "one" act falling within the statutory definition is sufficient to support a finding of abuse. 15 V.S.A. § 1101(1)(A).

Defendant also argues that plaintiff failed to show that there was a danger of further abuse. He points out that he was incarcerated at the time of the final hearing, and asserts that he was unable to meet his bail and there was an unspecified no-contact order in place with respect to a criminal charge he was facing. Defendant has not cited to any evidence admitted at the hearing regarding his bail conditions, ability to meet them, or a separate no-contact order. Even assuming this evidence was before the court, however, defendant could not demonstrate an abuse of discretion. Plaintiff testified that she continued to fear for her safety and the safety of her son. The court could reasonably conclude that there was a danger of further abuse notwithstanding the likelihood of defendant's release or the existence of a no-contact order.

We have addressed all arguments discernable in defendant's brief and see no basis to disturb the final RFA order.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Harold E. Eaton, Jr., Associate Justice


_____
Michael P. Drescher, Associate Justice

6